UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00317-FDW

| | |
|---|---|
| TIMOTHY C. COCHRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Timothy Cochran's Motion for Summary Judgment (Doc. No. 6), filed February 21, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment (Doc. No. 8), filed April 19, 2017. Plaintiff seeks judicial review of an unfavorable administrative decision on his application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

**FACTUAL BACKGROUND**

Plaintiff filed an application for Title XVI benefits on January 11, 2013, alleging disability beginning October 30, 2010. (Tr. 25). The claim was denied initially on May 22, 2013, and upon reconsideration on October 11, 2013. Id. Plaintiff filed a request for an administrative hearing on October 31, 2013, and Administrative Law Judge Marshall D. Riley ("the ALJ") held a hearing on

1

August 12, 2014. Id. On September 12, 2014, the ALJ issued decision finding that Plaintiff was not disabled. (Tr. 37).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 11, 2013. (Tr. 27), and had the severe impairments of COPD (chronic obstructive pulmonary disease), arthralgias, anxiety disorder, major depressive disorder, panic disorder without agoraphobia, and personality disorder. Id. However, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart B, App. 1. Id. The ALJ then found Plaintiff had the Residual Functional Capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> lifting 20 pounds occasionally and tend pounds frequently; standing/walking with normal breaks six to eight hours; and sitting for six hours; no pushing/pulling limitations; no postural limitations; no manipulative limitations; no visual limitation. . . . The claimant should be able to understand and remember well enough for unskilled work (short, repetitive tasks), interact appropriately in a non-skilled work environment but not with the general public; and adapt and respond appropriately well enough for unskilled work.

(Tr. 29). The ALJ found Plaintiff had no past relevant work. (Tr. 36). However, based on education, work experience, and RFC, the VE produced a list of jobs available in significant numbers Plaintiff could perform with the recorded limitations. Id.

Plaintiff requested a review of the ALJ's decision on September 29, 2014. (Tr. 21). The request was denied by the Appeals Council on July 29, 2016. (Tr. 1). Thus, the ALJ's decision of September 12, 2014, became the final decision of the Commissioner. (Tr. 1). Having exhausted administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g). The parties' Motions for Summary Judgment are now ripe for review. Plaintiff claims the ALJ erred in

assessing mental RFC, weighing opinion evidence, and assessing Plaintiff's credibility. (Doc. No. 7).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of the reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment

to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§

4

404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

## ANALYSIS

On appeal to this Court, Plaintiff makes three assignments of error. First, Plaintiff argues the ALJ failed to explain why certain mental limitations were not included in the RFC finding and therefore made an incomplete mental RFC. (Doc. No. 7). Second, Plaintiff argues the ALJ did not sufficiently explain why medical opinions given great weight were not included in the RFC finding. Id. Finally, Plaintiff argues the ALJ did not provide legally sufficient reasons for finding Plaintiff's testimony not credible. Id. For the reasons stated below, this Court finds substantial

5

evidence supports the ALJ's reasoning, and the ALJ used the correct legal standards when determining the RFC.

   A.   Plaintiffs' mental RFC assessment

Plaintiff argues the ALJ did not account for his moderate limitations in concentration, persistence, or pace in the RFC. (Doc. No. 7). The Fourth Circuit has explained:

> Social Security Ruling 96-8p explains that the RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Id. (quoting SSR 96-8p, 61 Fed. Reg. at 34,478); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

An ALJ may find limitations in concentration, persistence, or pace do not effect a claimant's ability to work where the evidence of the record clearly suggests otherwise. Hutton v. Colvin, 2015 WL 3757204 at *5 (N.D.W.Va. 2015). Further, there is no per se rule requiring remand when an ALJ does not perform an explicit function-by-function analysis. See Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d. Cir. 2013)); see also Horning v. Colvin, 2016 WL 1123103 at *3 (W.D.N.C. 2016). Remand may be appropriate when the ALJ fails to assess capacity to work "despite contradictory evidence in the record," or where there are other elements that "frustrate meaningful review." Mascio, 780 F.3d at 636.

In support of this assignment of error, Plaintiff argues the ALJ did not meet the requirements of SSR 96-8p, which requires more detail in the mental RFC analysis at steps 4 and 5 of the sequential evaluation process. (Doc. No. 7). Plaintiff argues the ALJ's determination falls short of the Fourth Circuit's requirements set forth in Mascio by not making a ruling as to whether or not Plaintiff can stay on task despite finding moderate mental limitations. Id. Plaintiff also

6

argues the ALJ did not take into account his restrictions in daily life when formulating the RFC. Id. These arguments are without merit; the ALJ gave a detailed explanation of why the evidence of record did not support additional limitations in the RFC determination (Tr. 28, 30-33, 53-54, 57, 240).

In particular, the ALJ weighed the evidence of record against Plaintiff's own alleged limitations, such as impaired memory, anxiety attacks, and depression, (Tr. 30), and found "such conditions are non-severe" and "[g]reater work-related limitations are not supported by credible evidence." (Tr. 35). In regards to Plaintiff's moderate difficulty with staying on task, the ALJ noted that Plaintiff had "difficulty handling stress" and "got confused every day or so." (Tr. 28). The ALJ contrasted this with Plaintiff's testimony that "pain did not affect his concentration." Id. The ALJ also noted Plaintiff has "mild restriction" in activities of daily living, but nothing indicated Plaintiff is "incapable of functioning independently outside of the area of his home." (Tr. 28-29). The ALJ noted despite Plaintiff's alleged limitations, he lived alone, took care of his own hygiene, and was able to go to the grocery store. (Tr. 28). The ALJ also cited testimony from a physician that Plaintiff "refocused easily when distracted," and had "intact recent and remote memory." (Tr. 28, 240). The same physician also opined that Plaintiff's "calculations were good" and his "judgment was functional." (Tr. 33). Another physician noted Plaintiff's "remote memory for medical events was good" and "his intellectual functioning seemed normal." (Tr. 28, 33). A behavioral assessment reported that Plaintiff "was a good historian as to the facts and events that occurred in his life." (Tr. 32).

SSR 85-15 requires incorporation of "any impairment related limitations created by an individual's response to demands of work" to be reflected in the RFC. 1985 WL 56857 at *6. If an ALJ finds that a claimant's limitations in concentration, persistence, or pace do not effect

7

Plaintiff's capacity to work, an ALJ may exclude those limitations from the RFC finding. Hutton, 2015 WL 3757204 at *5; see also McNutt v. Berryhill, 2017 WL 1323471 at *7 (W.D. Va 2017) ("Mascio does not broadly dictate that a claimants moderate impairment in concentration, persistence, or pace always translates into a limitation in the residual functional capacity."). Here, the ALJ clearly acknowledged Plaintiff's recorded limitations, as the RFC prohibits Plaintiff from interacting with the general public. (Tr. 29). Although the ALJ determined there was enough evidence in the record to support finding moderate limitations in concentration, persistence, or pace, the ALJ explains that there is too much conflicting evidence in the record to support additional work-related limitations in the RFC. (Tr. 35). Accordingly, substantial evidence review is a record provides the basis for the ALJ's ruling here, including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

B. Weight of Dr. Marcus' opinion

Plaintiff argues despite the ALJ's statement that the ALJ gave "great evidentiary weight" to the opinions of psychological consultative examiner Dr. Marcus, the ALJ failed to explain why limitations contained in her opinions were not included in his determination. (Doc. No. 7). Plaintiff points to a specific part of Dr. Marcus' opinion, which states, "[Plaintiff] deals poorly with anxiety and is likely to decompensate when stress is prolonged." (Tr. 241). Plaintiff argues that because the ALJ did not provide an explanation of Plaintiff's ability to handle stress in his determination, the ALJ failed to comply with Mascio. (Doc. No. 7). This argument also has no merit. The ALJ utilized <u>all</u> parts of Dr. Marcus' opinion in making his determination and provided

8

an explanation backed by substantial evidence as to why the doctor's opinion was accorded great weight.

Plaintiff mistakenly reads SSR 85-15 as requiring the ALJ to "answer the 'highly individualized' question of what is stressful to [Plaintiff]." (Doc. No. 7). This is incorrect; the ruling merely encourages adjudicators to be thorough in their evaluations on an "individualized basis." SSR 85-15, 1985 WL 56857 at *5. The ALJ was extremely thorough; he addressed <u>all</u> of the evidence regarding a mental impairment, including Dr. Marcus' opinion, before making a determination. (Tr. 35-36). The ALJ addressed Dr. Marcus' opinion in its entirety with a fair degree of detail, not just a single provision, before assigning it "great evidentiary weight." (Tr. 35). Other district courts have found that so long as an ALJ's finding of a claimant's ability to deal with stress is based on physician's opinions, the ALJ has complied with SSR 85-15. <u>See</u>, <u>e.g</u>., <u>Epperson v. Astrue</u>, No. 2:11-cv-12-D, 2012 WL 3862717 at *4 (E.D.N.C. Sept. 5, 2012). An ALJ does not have to include individualized limitations. <u>Id.</u>

Dr. Marcus' examination indicated Plaintiff was "in touch with reality" and "[h]is thought process was intact." (Tr. 33). The ALJ noted Dr. Marcus recorded Plaintiff's "fund of information was functional" and his "abstract thinking was appropriate." <u>Id.</u> The ALJ afforded Dr. Marcus' opinion "great evidentiary weight" because it was "consistent with her own clinical findings" and "the remainder of the case record." (Tr. 35). Plaintiff cites the VE's response to an extended hypothetical, combined with a single portion of Dr. Marcus' opinion as support that he cannot work for a full day. (Doc. No. 7, 12). The ALJ did not ignore the testimony of the VE; he merely chooses to only rely on the <u>relevant</u> portions of testimony. The ALJ pointed out that there have not been any episodes of decompensation, of extended duration, (Tr. 28), nor has Plaintiff ever required psychiatric hospitalization. (Tr. 35). The ALJ acknowledged that Dr. Marcus, as well as

9

the State Agency medical consultants, to whom the ALJ also gave great weight, both found Plaintiff has moderate difficulties with social interaction. (Tr. 35). The ALJ incorporated this element of Plaintiff's response to stress in his RFC by limiting interaction with the general public. Therefore, the ALJ provided an adequate explanation as to why Dr. Marcus' opinion was given great evidentiary weight and incorporated all relevant parts into the ALJ's decision.

    C.    <u>Weight of Plaintiff's credibility</u>

Plaintiff alleges the ALJ did not give "legally sufficient reasons" for finding Plaintiff's testimony not entirely credible. (Doc. No. 7). Plaintiff claims the ALJ used boilerplate language and simply recited medical evidence in support of his RFC. <u>Id.</u> Plaintiff claims the ALJ's only reason for finding Plaintiff's testimony not credible was because Plaintiff never sought free or low cost medical care. (Doc. No. 7, 15). Plaintiff additionally alleges the ALJ did not comply with SSR 16-3 by not inquiring into Plaintiff's inability to afford treatment. (Doc. No. 7). Plaintiff cites to SSR 96-7p, 1996 WL 374186, arguing the ALJ must state in the decision specific reasons supported by substantial evidence for the credibility determination. (Doc. No. 7, 13). However, these arguments are without merit. The ALJ conducted extensive analysis of Plaintiff's subjective complaints and found them not credible when compared to other objective evidence. (Tr. 34-35)

"Disputes over the role of subjective evidence in proving pain are nothing new. 'This circuit has battled the [Commissioner] for many years over how to evaluate a disability claimant's subjective complaints of pain.'" <u>Lewis</u>, 858 F.3d at 865 (quoting Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994) (Hall, J., concurring)). The Fourth Circuit recently explained the relevant regulations applicable to this inquiry:

> Under the regulations implementing the Social Security Act, an *866 ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could

10

reasonably produce the alleged symptoms. Id. §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. Id. §§ 404.1529(c), 416.929(c). The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects. Id. §§ 404.1529(c)(4), 416.929(c)(4).

Lewis, 858 F.3d 858, 865–66.

Plaintiff's argument that the ALJ "did not identify which evidence he found credible," (Doc. No. 7, 10), wholly ignores two pages of the ALJ's analysis of Plaintiff's symptoms in the decision. (Tr. 34-35). The ALJ referenced the objective evidence of record and found Plaintiff's subjective complaints were largely unsubstantiated. Id. Specifically, the ALJ compares Plaintiff's allegations of back pain and knee pain to the objective medical evidence and finds them inconsistent with the record. (Tr. 34). The ALJ notes Plaintiff was found to have only "mild range of motion issues" in X-rays of his back, and X-rays taken of the knees were "within normal limits." Id. The ALJ also noted that despite allegations of respiratory difficulties, examinations "do not reflect significant ongoing respiratory abnormalities." Id. While Plaintiff alleges depression, anxiety, and panic attacks, the ALJ points out "[s]ignificant signs of anxiety or panic have not been detected in a clinical setting" and "no treating source has indicated that [Plaintiff] has significant emotional problems." (Tr. 35). Because most of Plaintiff's subjective complaints, both about physical and mental limitations, are unsupported by objective evidence, the ALJ found them to be not credible.

Plaintiff's argument that the ALJ needed to inquire as to why he did not seek free or low cost medical treatment is without merit. Plaintiff cites SSR 82-59, 1982 WL 31384, and claims the ALJ was required to obtain documentation of Plaintiff's failure to exhaust all options when attempting to obtain free or low cost medical treatment. (Doc. No. 7, 15). Plaintiff's reliance on

11

this ruling is misplaced, as Plaintiff has failed provide any kind of documentation that "[a]ll possible resources" within the community were explored in his search for free or low cost medical care. SSR 82-59, 1982 WL 31384 at * 4. Nothing in SSR 82-59 suggests a burden is placed on the ALJ to obtain documentation of Plaintiff's attempts to obtain low cost medical care. The ruling explains that being unable to pay for prescribed treatment is an acceptable cause for failing to follow the treatment. Id. It states that all possible free and low costs sources must be explored, and that contact with these sources must be documented. Id. If anything, the provision implies *claimants* must provide this documentation to support their assertions that they exhausted all possible resources before concluding that the prescribed treatment is unaffordable. The evidence Plaintiff offers to indicate he sought free or low cost health care does little to help his case and, if anything, strengthens the ALJ's conclusion. (Tr. 318). Plaintiff offers only a letter from a physician asking that Plaintiff receive his prescriptions without paying because he cannot afford them. Id. There is no evidence that Plaintiff ever presented this letter to a pharmacy and was denied or used it to attempt to obtain healthcare. Id.

Plaintiff identifies SSR 96-7p and 16-3p as additional support to justify his failure to follow the prescribed treatment. (Doc. No. 7). SSR 96-7p is not, however, the controlling ruling at this time, and Plaintiff's reliance on SSR 16-3p is misplaced. SSR 16-3p states that when an individual fails to follow treatment that might improve symptoms, allegations may be found to be inconsistent with the overall record. 2016 WL 1119029 at *8. SSR 16-3p does not require an ALJ to obtain documentation explaining a claimant's failure to follow treatment; it merely states that an ALJ "may obtain" information on the subject if pertinent. Id. at *9. When the failure to follow prescribed treatment directly contradicts a claimant's subjective complaints, ALJs have questioned the reliability of the claimant's statements. Jeffrey v. Colvin, 2016 WL 4445274 at *12

(S.D.W.Va. Jun. 6, 2016).  The ALJ explained that despite Plaintiff's assertions he could not afford medication, there is no evidence supporting this assertion, and Plaintiff has never been denied from the emergency room or applied for and been denied Medicaid.  (Tr. 34).

The ALJ did not limit his credibility analysis to vague, boilerplate language.  He systemically moved through the record to analyze Plaintiff's complaints as compared to the objective evidence and did not find the alleged limitations were credible or needed to be incorporated into the RFC.  Because the ALJ methodically analyzed Plaintiff's subjective statements as compared to the medical evidence of record and found them to be inconsistent, he did not err in finding them to be not credible.

## CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED, and the Commissioners decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: November 20, 2017

Frank D. Whitney
Chief United States District Judge